## PHOENIX SAVINGS AND LOAN, INC. *v.* STRINER ENTERPRISES, INC.

[No. 262, September Term, 1971.]

*Decided April 4, 1972.*

The cause was argued before HAMMOND, C. J. and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Clarence W. Sharp* for appellant.

*Randall M. Lutz,* with whom were *Louis J. Glick* and *Leonard Kohlenstein* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

Since the gaudy adolescence of the appellant (Phoenix)

has been fully exposed in *Bris Realty Co. v. Phoenix Savings and Loan Assn., Inc.*, 238 Md. 84 (1965), *Eastern Air Lines, Inc. v. Phoenix Savings and Loan Assn., Inc.*, 239 Md. 195 (1965), *Republic Realty Co. v. Phoenix Savings and Loan Assn., Inc.*, 250 Md. 549 (1968), *Republic Realty Co. v. Phoenix Savings and Loan Assn., Inc.*, 254 Md. 532 (1968), *Phoenix Savings and Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245 (4th Cir. 1967), and *Phoenix Savings and Loan, Inc. v. Aetna Cas. & Sur. Co.*, 427 F. 2d 862 (4th Cir. 1970), we can devote our entire attention to one of its less spectacular problems.

In December 1960 the appellee (Striner) [1] leased a store, 20 feet by 100 feet, to Phoenix for a term of 15 years, at a monthly rental of $583.33. The lease provided, among many other things, that the premises were to be used for the purpose of a savings and loan association "and none other." Phoenix agreed not to assign the lease, nor to sublet the premises, without the written consent of Striner, which agreed that its "consent * * * [would] not be unreasonably withheld." Although Phoenix never occupied the premises it nevertheless paid the monthly rent until March 1966.

On 4 April 1966 the director of the Department of Building, Savings and Loan Associations sent Phoenix the following order: [2]

### "FINAL ORDER NO. 64

#### Phoenix Savings and Loan, Inc.

"It appearing that Phoenix is in violation of Article 23 of the Annotated Code of Maryland (1957 Edition, 1965 Cumulative Supplement) Sections 144-161KK and Regulations 100.1-110.14 promulgated by the Board of Building, Savings and Loan Association Commissioners, and, in particular, that

---

1. Actually Belvedere Shopping Center, Inc., Striner's predecessor in title.
2. We have edited the text of the order to some extent.

"1. Phoenix has, for a period of several years, paid rent on office space located at
* * *
3750 W. Belvedere Avenue
which said office, during the past three (3) years, has not been, nor is it now being, maintained as a branch office to serve the association's customers and the general public in the respective area;
* * *
"3. that the rental of this office has caused, and continues to cause, the association to sustain high and unwarranted operating expenses.

"It is, therefore, ordered that

"Phoenix discontinue the practice heretofore referred to and to conform with all requirements of the aforesaid law and regulations and sound operating principles and practices by taking the necessary action to immediately divest itself of all interest in the office space located at the address set forth above.

Allan D. Housley, Director"

On 18 May Phoenix sought declaratory relief in the Circuit Court of Baltimore City. In its bill it recited the fact of the lease, the restriction against any use except as a savings and loan office, and the order of 4 April; it alleged the impossibility of further compliance with the covenants of the lease. It prayed a declaration that the lease became null and void on 4 April 1966. Striner answered, challenging the power of the director to "impair the validity and obligation of a contract" and counterclaiming a sum of money stipulated to be $24,838.19. Striner prevailed and Phoenix has appealed.

In 1961 the Legislature, by the enactment of Chapter 205 of the Laws of Maryland of 1961, acted to bring the savings and loan business under state supervision. The relevant provisions of Chapter 205 are known now

as Code (1966 Repl. Vol. and 1971 Cum. Supp.), Art. 23, §§ 161A-161KK. *See* J. W. Sause, Jr., *Association "For the Meretorious* [3] *Purpose of Mutual Benefit": A Chronicle of the Building and Loan Industry in Maryland From 1852-1961,* 22 Md. L. Rev. 1 and 91 (1962).

Section 161G (c) provides as follows:

> "The Director shall have general supervision over all associations which are subject to the provisions of this article by use of the powers conferred upon him by law. The Director may pass such orders as he deems necessary to compel any association: (1) To comply with its charter, constitution and bylaws; (2) to comply with the laws of this State to carry out the purposes of this subtitle; (3) to comply with such regulations as may be adopted pursuant to the provisions of this subtitle. But, no such order shall become effective until the Director shall have first given the directors of such association, or their representatives, an opportunity to be heard at a time and place designated by the Director."

Section 161D (a) provides as follows:

> "Except as provided in subsections (b) and (c) hereof, the bylaws, shares, *contracts, and obligations* of any existing association *shall continue in full force and effect.* All such associations shall henceforth be operated and regulated in accordance with the provisions of §§ 161A through 161KK of this article." (Emphasis added.)

The chancellor, Cullen, J., although making no reference to § 161D (a), concluded there is a subsisting contractual relationship between the parties. In his opinion he said:

---

3. Mr. Sause seems to imply that the Act of 1852 is the source of this incorrect spelling of the word. In our volume of the Laws of 1852, however, the spelling is "meritorious."

"The order of the Director is not designed to compel Phoenix (1) to comply with its charter, constitution and by-laws. (2) No failure to comply with the laws of Maryland is shown and the directive does not require compliance with any of the statutory law of this State. (3) There is no regulation, alleged or proven which has been violated by Phoenix nor does it appear that the Order directs a compliance with any such regulation.

"It is apparent that the Legislature did not intend to give to the Director the authority to abrogate contracts and to divest property rights and interests in derogation of contractual obligations. The Order of the Director is beyond the scope of the powers of the Department and is therefore a nullity."

We think Judge Cullen reached the correct result, but whether the director has the power to abrogate contracts entered into by a building and loan association after 1 June 1961, the effective date of the act, is a question with which we need not concern ourselves and which we do not decide. The lease in question was a "contract" and an "obligation" in existence some seven months before the effective date of the act. It is clear that § 161D (a) withholds from the director the power to interfere with it.

> *Orders* [4] *affirmed.*
> *Costs to be paid by appellant.*

---

4. Judge Cullen's order of 5 December 1969 declared a "subsisting contractual relationship between the parties" to exist and he referred the case to a Standing Examiner-Master to determine the amount of the rent in arrears. Judge Harris passed the order of 23 August 1971 awarding Striner, as recommended by the Examiner-Master, the sum of $24,838.19.